IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JAMIS M. JOHNSON,<br><br>　　　　Petitioner,<br><br><br><br><br><br>　　　　vs.<br><br><br>MICHAEL MAYER, JR., director of the Utah Adult Probation and Parole Agency, in his official capacity; TROY STAKER, agent/officer for Utah Adult Probation and Parole, in his official capacity; and MARK SHURTLEFF, attorney general of the State of Utah, in his official capacity,<br><br>　　　　Respondents. | MEMORANDUM DECISION AND ORDER DENYING AND DISMISSING PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY<br><br><br><br>Case No. 2:11-CV-450 TS |

This matter is before the Court on Petitioner Jamis M. Johnson's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. For the reasons discussed below, the Court will deny and dismiss the Petition.

## I.  FACTUAL BACKGROUND

Jim Young and Ron Meyers held a family dairy farm as the sole members of Milk King

Dairy, LLC (the "LLC").  In July 2000, Young and Meyers "learned that A. Paul Schwenke was

interested in meeting some dairy farmers to talk about some investment."[1]  Young and Meyers

met with Schwenke, Petitioner Johnson, and others to discuss the proposed investment.

> Schwenke introduced Johnson as "a high powered lawyer" and a "security expert
> from out of New York," which one of the dairymen said "lent a great deal of
> credibility" to Schwenke's presentation.  Neither Schwenke nor Johnson disclosed
> that Johnson was the subject of ongoing disciplinary proceedings by the Utah
> State Bar for misappropriating client funds.  Johnson was also subject to three tax
> liens, totaling $1,669,562.89, against his property, and had a Small Business
> Administration judgment against him.  Johnson did not disclose these facts at the
> meeting.  Nor did Johnson tell the dairymen that Schwenke was an attorney who
> had been disbarred for misappropriating client funds and that Johnson was
> pursuing legal action against Schwenke over a failed business deal.[2]

Eventually, Young and Meyers agreed to transfer all of the farm's assets to American-

Dairy.com, Inc. ("American-Dairy"), a company that Schwenke had incorporated, in exchange

for stock in that company.  Johnson signed the agreement on behalf of American-Dairy as the

company's CEO and signed the stock certificates issuing 200,000 shares to Young and Meyers.

Though Young and Meyers continued to manage the day-to-day operations of the farm,

"Schwenke moved an additional 200 to 250 cows onto the farm, refused to allow the dairymen to

---

[1]*State v. Johnson*, 224 P.3d 720, 722 (Utah Ct. App. 2009) (internal quotation marks
omitted).

[2]*Id*. at 722-23.

lease out an unused portion of the farm, and obtained a $50,000 loan against the farm on which

he never made any payments."[3]  Creditors eventually foreclosed on the farm and its equipment.

## II.  PROCEDURAL HISTORY

On October 24, 2005, Johnson and Schwenke were charged as co-defendants with one

count each of securities fraud and theft by deception.  The trial court severed Johnson's and

Schwenke's cases, and granted the State's motion to dismiss the theft by deception charge

against Johnson.

At trial, the State called Michael Hines, the Director of Enforcement for the Utah

Division of Securities, to testify as an expert.  Johnson repeatedly objected to Hines's testimony,

arguing that it misstated the law and impermissibly stated legal conclusions.  In response, the

trial court informed the jury that the court would later instruct the jury as to the law.  Petitioner

was permitted to cross-examine Hines and also put on his own expert to testify about securities

law.

On March 7, 2007, the jury found Petitioner guilty.  On June 6, 2007, Johnson was

sentenced to a suspended prison term of one to fifteen years, thirty-six months of supervised

probation, six months in the Millard County Jail, and an additional six months of electronically

monitored home confinement.

Petitioner appealed his conviction to the Utah Court of Appeals.  On appeal, Petitioner

raised the following issues:

---

[3]*Id*. at 723.

- Whether Utah Code Ann. § 61-1-1 is applicable where the evidence shows the transaction did not involve the "offer" or "sale" of a security because the transaction did not involve a disposition or attempted disposition for value, but rather was a mere change in the form of ownership.

- Whether the District Court committed reversible error by allowing the State's expert witness, Michael Hines, the Director of Enforcement for the Utah Division of Securities, to testify and provide impermissible legal conclusions and incorrect interpretations of the law to the jury.

- Whether the District Court erred in failing to give curative jury instructions following its admission of improper expert testimony and other evidence.

- Was Utah Code Ann. § 61-1-1, as applied here, unconstitutionally vague and did it violate the separation of powers clause of the Utah Constitution?

- Did the trial court err in denying Johnson's renewed motion for a new trial and/or reduction in severity of the offense where newly discovered evidence from the restitution hearings established the property allegedly exchanged for securities was valueless?

- Whether the trial court erred in ordering restitution where there was no evidence that the alleged "victims" suffered any pecuniary loss, let alone a loss equal to the restitution order, resulting from Johnson's alleged violation of Utah Code Ann. § 61-1-1(2).

On December 17, 2009, the Utah Court of Appeals affirmed Petitioner's conviction, but reversed and remanded for further proceedings on the issue of restitution. As to the first issue raised by Petitioner, the Utah Court of Appeals found that the transfer of assets from the LLC to

American-Dairy was a sale for value. Therefore, Utah Code Ann. § 61-1-1 was applicable. On the fifth issue, the Utah Court of Appeals agreed with the trial court in finding that there was sufficient evidence from which the jury could find that the farm was worth at least $10,000.

The court next addressed Petitioner's arguments concerning the testimony of Michael Hines. While Petitioner argued that the trial court committed reversible error by allowing Hines "to give testimony that was riddled with impermissible legal conclusions and [i]ncorrect [i]nterpretation[s] of the [l]aw," the Utah Court of Appeals held that Petitioner could not "show that he was prejudiced by Hines's testimony because the trial court correctly and promptly instructed the jury."[4] Thus, "any error in the admission of Hines's testimony was not prejudicial."[5]

The Utah Court of Appeals next addressed "Johnson's claim that section 61-1-1, as applied in Johnson's case, is unconstitutionally vague under the Due Process Clause of the Utah Constitution."[6] Petitioner argued that Utah Code Ann. § 61-1-1(2) did not impose an affirmative duty to disclose all material facts, but instead required proof of a material omission that renders a predicate statement misleading, in light of the circumstances in which it is made. Petitioner argued that, because no predicate statements were proved, his conviction was based on a vague obligation to disclose, which he argued violated his due process rights.

---

[4]*Id*. at 730 (internal quotation marks omitted).

[5]*Id*.

[6]*Id*.

The Utah Court of Appeals determined that it need not reach Petitioner's arguments, because it found "that the instructions required the jury to find that a predicate statement was made and that the record supports the jury's finding that such predicate statements were made."[7] The court found that the jury instructions permitted the jury to find Petitioner guilty only if it found that he "made an untrue statement of a material fact or *omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading*."[8] The court found this language to be consistent with the statute of conviction.

The court further rejected Petitioner's "argument that section 61-1-1(2) requires that the person who omits a material fact also be the person who made the predicate statement."[9] The court reasoned that, to conclude otherwise, "would inject language not found in the statute and allow a person to evade criminal liability by remaining silent while others make gross misstatements about the person's background, skills, experience, or other qualities."[10]

Finally, the court considered the issue of restitution, on which it reversed the trial court and remanded for further proceedings.

Petitioner filed petition for writ of certiorari with the Utah Supreme Court. In that petition, Petitioner raised the following three claims:

---

[7] *Id*. at 731.

[8] *Id*.

[9] *Id*. at 731 n.16.

[10] *Id*.

- Whether the Court of Appeals erred by ruling that statutes prohibiting fraud in sale of securities for value exceeding $10,000 were applicable to Petitioner Jamis Johnson where the evidence showed that the transaction at issue was simply a change in ownership of assets for the investors and Johnson derived no economic benefit from the transaction?

- Whether the Court of Appeals erred in concluding that the testimony of the State's expert, the Director of Enforcement for the Utah Division of Securities, which repeatedly offered an incorrect description of the elements of securities law for a criminal case, did not deprive Johnson of a fair trial and violate the due process and separation of powers provisions of the Utah Constitution?

- Whether the Court of Appeals erred in concluding that Johnson violated Utah's securities fraud statutes where he personally made no statements that were either not true or misleading, and where he was not charged with conspiracy or accomplice liability for which he might be found liable for another's statements?

The Utah Supreme Court denied Petitioner's petition for writ of certiorari on June 11, 2010. Petitioner did not file a post-conviction petition in state court. Petitioner timely filed his Petition with this Court on May 18, 2011. On August 29, 2011, the Court directed Respondents to respond to the Petition, which they have done. Petitioner has filed a reply. Therefore, the Petition is now ripe for decision.

## III.  STANDARD OF REVIEW

"Under AEDPA, the standard of review applicable to a particular claim depends on how that claim was resolved by the state courts."[11]  If the state court has adjudicated the claim on the merits, the Court may only grant relief if the state court's determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[12]  Factual findings made by state courts are presumed correct unless the presumption is rebutted by clear and convincing evidence.[13]  The "standard of review changes if there has been no state-court adjudication on the merits of the petitioner's claim."[14]  In such a situation, § 2254(d)'s deferential standards of review do not apply.[15]

## IV.  DISCUSSION

Respondents argue that the Petition should be dismissed for a number of reasons. Respondents first argue that Petitioner failed to exhaust his claims.  Respondents further argue that Petitioner's claims are procedurally defaulted.  Respondents also argue that Petitioner's

---

[11]*Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011).

[12]28 U.S.C. § 2254(d).

[13]*Id*. § 2254(e)(1).

[14]*Byrd*, 645 F.3d at 1166.

[15]*Id*.

claims do not present federal questions and do not meet the AEDPA standards for relief. The Court agrees that Petitioner failed to exhaust his claims and they are now procedurally defaulted.

A.    EXHAUSTION

"For a federal court to consider a federal constitutional claim in an application for habeas, the claim must be 'fairly presented to the state courts' in order to give state courts the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"[16] "The exhaustion requirement is satisfied if the issues have been 'properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack.'"[17]

"It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."[18] Further, "presentation of a 'somewhat similar' claim is insufficient to 'fairly present' a federal claim before the state courts."[19] "Claims not included in a petition for discretionary review to the state's highest court are not exhausted and are procedurally defaulted when . . . they are now time-barred."[20] A

---

[16]*Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

[17]*Brown v. Shanks*, 185 F.3d 1122, 1124 (10th Cir. 1999) (quoting *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994)).

[18]*Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted).

[19]*Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006).

[20]*Gonzales v. McKune*, 279 F.3d 922, 924 (10th Cir. 2002); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

habeas "petitioner bears the burden of demonstrating that he has exhausted his available state remedies."[21]

1.    *Claim One*

Petitioner's first claim states:

> The State of Utah repeatedly and incorrectly insisted to the jury, both through statements of the prosecutor and through expert testimony, that Utah Code Sections 61-1-1 and 61-1-21 required Petitioner to affirmatively disclose all material facts a hypothetical investor would want to know, thereby depriving Petitioner of a fair trial and violating Petitioner's due process rights under the United States Constitution by eliminating necessary elements from the charging statutes and prosecuting him under an unconstitutionally vague application of the statutes.[22]

The question presented to the Utah Supreme Court in his petition for writ of certiorari was

> [w]hether the Court of Appeals erred in concluding that the testimony of the State's expert, the Director of Enforcement for the Utah Division of Securities, which repeatedly offered an incorrect description of the elements of securities law for a criminal case, did not deprive Johnson of a fair trial and violate the due process and separation of powers provisions of the Utah Constitution?[23]

In his petition for writ of certiorari, Petitioner listed the Fifth and Fourteenth Amendments to the United States Constitution in the "Determinative Law" section of his brief. However, Petitioner did not actually cite any provision of the United States Constitution in his brief. Indeed, a review of that document shows that his arguments were centered on alleged violations of the Utah Constitution and his brief made only general reference to notions of "due

---

[21] *McCormick v. Kline*, 572 F.3d 841, 851 (10th Cir. 2009).

[22] Docket No. 1, at 5.

[23] Docket No. 8 Ex. 9, at 1.

process" and the right to a "fair trial." Further, in Petitioner's response to brief in opposition for

writ of certiorari, Petitioner does not reference the United States Constitution at all. Instead,

Petitioner argued that "Mr. Hines' testimony violated both the Due Process and Separation of

Powers clauses of the Utah Constitution."[24]

Petitioner argues that he sufficiently exhausted his first claim. In support, Petitioner

relies on *Nichols v. Sullivan*.[25] In *Nichols*, the petitioner argued to the New Mexico Supreme

Court that the trial court erred in refusing to grant a request for mistrial where a statement from a

witness "rendered his trial unfair" and violated "a substantial right."[26] The court found that even

though the petitioner

> did not explicitly refer to the phrase "due process" in the relevant argument
> heading of his brief or in the body of his argument, nor refer to any federal cases,
> he did cite the Fifth Amendment due process clause as one basis for his claim in
> the docketing statement he filed with the New Mexico Supreme Court. Nichols'
> appellate papers thus put the New Mexico Supreme Court on notice that Nichols
> raised a constitutional violation and provided that court an opportunity to consider
> the claim.[27]

The Court finds this case more akin to *Duncan v. Henry*.[28] In *Duncan*, the petitioner

objected to the use of certain testimony at trial under a California rule of evidence. On appeal,

the petitioner "pursued his evidentiary objection and requested the appellate court to find that the

---

[24]Docket No. 8 Ex. 11, at 7.

[25]867 F.2d 1250 (10th Cir. 1989).

[26]*Id*. at 1252-53.

[27]*Id*. at 1253.

[28]513 U.S. 364 (1995) (per curiam).

error was a 'miscarriage of justice' under the California Constitution."[29]  In his federal habeas petition, the petitioner argued "that the evidentiary error amounted to a denial of due process under the United States Constitution."[30]

The Supreme Court found that the petitioner "did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment."[31]  Because the state and federal inquiries were just "substantially similar," rather than "virtually identical," the Court found that the petitioner had failed to exhaust his state remedies.[32]

The same conclusion must be reached here.  Before the Utah Supreme Court, Petitioner focused his argument on alleged violations of the Utah Constitution.  It was not until he filed his Petition in this Court that he focused on his claims under the United States Constitution.  This is insufficient.

Petitioner also argues that he relied on federal law in challenging the decision of the Utah Court of Appeals.  However, Petitioner points to only one case that he cited in his brief to the Utah Supreme Court: *U.S. ex rel. Burke v. Greer*.[33]  *Greer* concerned a comment by a prosecutor unconstitutionally referencing the failure of the defendant to testify.  Petitioner cited *Greer* in his

---

[29]*Id*. at 364.

[30]*Id*. at 365.

[31]*Id*. at 366.

[32]*Id*.

[33]756 F.2d 1295 (7th Cir. 1985).

petition for writ of certiorari for the proposition that "final jury instructions are 'ordinarily not sufficient,' however, to cure constitutional errors."[34]  This single citation to a general statement of law is hardly sufficient to show that Petitioner's federal claim was fairly presented to the Utah Supreme Court.

Petitioner further argues that he exhausted his remedies even if he focused on the Due Process clause of the Utah Constitution.  This is so, Petitioner argues, because "Utah's constitutional guarantee of due process is substantially the same as the due process guarantees contained in the Fifth and Fourteenth amendments to the United States Constitution."[35]  The Supreme Court has left open the question of whether raising a state claim that is "identical" to a federal claim is sufficient for exhaustion purposes.[36]  However, the Supreme Court has made clear that "mere similarity of claims is insufficient to exhaust."[37]  Based upon this, the Court finds that Petitioner failed to exhaust his remedies as to this claim.

   2.    *Claim Two*

Petitioner's second claim states:

   In affirming Johnson's conviction, the Utah Court of Appeals relied upon
   evidence and legal theories that were not presented to the jury, including the
   adoption and retroactive application of a novel construction of the charging

---

[34]*Id*. at 1303.

[35]*In re Worthen*, 926 P.2d 853, 876 (Utah 1996).

[36]*Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004).

[37]*Duncan v. Henry*, 513 U.S. 364, 366 (1995).

statute, thereby violating Petitioner's due process rights under the United States Constitution.[38]

Based upon the nature of this claim, a challenge to the decision of the Utah Court of Appeals, it could have only been raised in the petition for writ of certiorari Petitioner filed with the Utah Supreme Court. However, Petitioner did not challenge the decision of the Utah Court of Appeals on due process grounds. Rather, he argued that the Utah Court of Appeals was incorrect in its interpretation and application of Utah law. The precise nature of the claim presented in his petition for writ of certiorari was: "Whether the Court of Appeals erred in concluding that Johnson violated Utah's securities fraud statutes where he personally made no statements that were either not true or misleading, and where he was not charged with conspiracy or accomplice liability for which he might be found liable for another's statements?"[39]

In support of his argument that he did exhaust his state remedies on this claim, Petitioner points to pages 19-20 of his petition for writ of certiorari and page 5 of his response brief in opposition to petition for writ of certiorari. A review of these pages does not support Petitioner's claim the he fairly presented his due process claim to the Utah Supreme Court.

Petitioner's petition for writ of certiorari argued that there was no evidence that he made misleading statements and that the Utah Court of Appeals impermissibly "combined Schwenke's and Johnson's conduct together"[40] and relied upon statements that were not contained in the record. Petitioner also took issue with the Utah Court of Appeals' construction of Utah Code

---

[38]Docket No. 1, at 5.

[39]Docket No. 7 Ex. 9, at 1.

[40]*Id*. at 19.

Ann. § 61-1-1(2).  Absent from this discussion is any indication that, by taking said actions, the Utah Court of Appeals violated Petitioner's due process rights under the United States Constitution.

Petitioner points the Court to his citation of *State v. Lopes*,[41] in his petition for writ of certiorari.  Petitioner cited *Lopes* for the proposition that "to convict Johnson as charged, the State needed to adduce evidence to prove beyond a reasonable doubt that Johnson engaged in conduct meeting each element of the charged offense."[42]  *Lopes*, in turn, provides that "as both a state and federal constitutional matter, we conclude that due process requires that the prosecution prove every element of the charged crimes beyond a reasonable doubt."[43]  This tenuous citation, to a principle that was not directly on point with Petitioner's primary argument, is insufficient to demonstrate exhaustion.

Petitioner's response brief in opposition to petition for writ of certiorari fares no better.  It is true that, in passing, Petitioner makes reference to due process.  However, Petitioner does not assert that the decision of the Utah Court of Appeals violated his federal due process rights by relying upon evidence and legal theories that were not presented to the jury.  Rather, the entire argument in this section of his response brief is dedicated to the issue of reliance, an issue that is not present here.

---

[41]980 P.2d 191 (Utah 1999).

[42]Docket No. 7 Ex. 9, at 20.

[43]*Lopes*, 980 P.2d at 195.

Petitioner relies on *Hawkins v. Mullin*,[44] to support his claim that he exhausted his state remedies on this claim. In *Hawkins*, the state argued that the petitioner "failed to exhaust [a] specific federal habeas claim because he never asserted any federal basis for relief in state court."[45] The Tenth Circuit disagreed, noting that the petitioner "referred to both due process and the Eighth Amendment's freedom from cruel and unusual punishment" in his request for post-conviction relief.[46] This was sufficient for the court to find that the petitioner had exhausted his federal claim.[47]

The same cannot be said here. Petitioner took issue with the Utah Court of Appeals' use of evidence that was allegedly not before the jury and its construction of Utah law. At best, Petitioner made a single passing reference to due process in his response brief in opposition to petition for writ of certiorari. Such is not sufficient to satisfy the exhaustion requirement.[48] The Supreme Court has made clear "that it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."[49] Therefore, the Court finds Petitioner's second claim to be unexhausted.

---

[44]291 F.3d 658 (10th Cir. 2002).

[45]*Id*. at 663.

[46]*Id*. at 664.

[47]*Id*.

[48]*See Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988).

[49]*Gray v. Netherland*, 518 U.S. 152, 163 (1996).

3. *Claim Three*

Petitioner's third claim states:

> The State of Utah violated Utah's discovery rules and the fundamental requirements established by *Brady v. Maryland*, 373 U.S. 893 (1963), and its progeny, by failing to disclose mitigating and impeaching evidence regarding the value and ownership of certain property at issue in the underlying transaction, which evidence relates to value requirements for establishing a violation of Utah Code Sections 61-1-1 and 61-1-21.[50]

Petitioner never raised a *Brady* claim either before the Utah Court of Appeals or the Utah Supreme Court, and he admits as much by acknowledging that he did not refer to his claim as a *Brady* claim.[51]  Nevertheless, Petitioner argues that he did exhaust this claim because he argued he was entitled to a new trial based on the State's alleged suppression of evidence.

Petitioner correctly argues that he is not required to cite "book and verse on the federal constitution"[52] and that "a failure to invoke talismanic language . . . should not be the basis for a finding of nonexhaustion."[53]  However, Petitioner must fairly present the substance of his federal claim to the state courts.  "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."[54]

Petitioner argued before the Utah Court of Appeals that he was entitled to a new trial based on new evidence that was provided at the restitution hearing.  In support, Petitioner pointed

---

[50]Docket No. 1, at 5-6.

[51]Docket No. 2, at 32 n.2.

[52]*Picard*, 404 U.S. at 278.

[53]*Nichols*, 867 F.2d at 1252.

[54]*Anderson*, 459 U.S. at 6 (internal citation omitted).

to the State's obligation under Utah Rule of Criminal Procedure 16(b) to provide such information. However, Petitioner made no reference to *Brady* and nowhere asserted that the State violated its duty to provide *Brady* materials.

Moreover, Petitioner did not re-assert this argument before the Utah Supreme Court. Rather, Petitioner asserted that "[n]o value was transferred or received as a result of the August 9, 2000 transaction by any party, particularly by Johnson"[55] and that "[t]he State presented no evidence that Johnson personally sought to obtain any property, money or thing of any value."[56] In his response brief in opposition to petition for writ of certiorari, Petitioner argued that "the Court of Appeals overlooked that the valuation evidence before the jury was incomplete because the jury was not informed: (a) of the substantial debt on the property exceeded its value, or (b) that the farm equipment at issue was never owned by the LLC . . . ."[57] Petitioner argued that this information "was not provided to Johnson until the restitution hearings, despite the State's continuing duty to supplement discovery."[58] However, Petitioner did not make any argument that could be construed as being similar to the *Brady* claim he now asserts.

Based upon this, the Court cannot find that Petitioner fairly presented his *Brady* claim to the Utah courts. Rather, Petitioner argued that the State failed to comply with state disclosure

---

[55]Docket No. 8 Ex. 9, at 11.

[56]*Id.* at 13.

[57]Docket No. 8 Ex. 11, at 3.

[58]*Id.*

rules and that the Utah Court of Appeals erred by allegedly ignoring this evidence in making its decision.  Therefore, the Court finds that Petitioner has failed to exhaust his third claim.

B.     PROCEDURAL DEFAULT

"[T]he Supreme Court has held that if a petitioner 'failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." [59]

Respondents argue that Petitioner's claims would be procedurally barred because: (1) Petitioner never filed a state petition for post-conviction relief and any such petition would now be untimely; and (2) Utah bars collateral review of claims that could have been raised on direct appeal but were not.

Petitioner does not respond directly to this argument.  Based on the reasoning provided by Respondents, the Court agrees that Petitioner defaulted his claims.  Petitioner argues that any default should be excused.

In *Coleman*, the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.[60]

---

[59] *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 510 U.S. 722, 735 n.1 (1991)).

[60] *Coleman*, 510 U.S. at 750.

Petitioner argues that the fundamental miscarriage of justice exception applies because he is actually innocent.

The Supreme Court has "consistently reaffirmed the existence and importance of the exception [to the general rules of procedural default] for fundamental miscarriages of justice."[61] Thus, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."[62]

 "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."[63]  Thus, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."[64]  "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."[65]  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness

---

[61]*Schlup v. Delo*, 513 U.S. 298, 321 (1995).

[62]*Murray v. Carrier*, 477 U.S. 478, 496 (1986).

[63]*Schlup*, 513 U.S. at 327.

[64]*Id*.

[65]*Id*. at 329.

accounts, or critical physical evidence—that was not presented at trial."[66] Petitioner "is required to provide evidence that does more than simply 'undermine the finding of guilt against' him or her."[67]

This is a "very narrow exception."[68] The Supreme Court has made clear that "claims of actual innocence are rarely successful"[69] and that the exception should be applied only in extraordinary cases.[70]

After careful review, the Court finds that Petitioner has failed to meet his burden. Petitioner argues that "the State never presented any evidence that Johnson made any statements that were materially misleading due to an omission and thus there was no basis upon which a reasonable juror could have convicted him for violation of Utah Code Ann. §§ 61-1-1(2) and 61-1-21."[71] Therefore, Petitioner argues, "[t]he jury must have instead convicted Johnson under the incorrect, and unconstitutionally vague, application of the statutes advocated by the State and its expert witness, as set forth in Johnson's first habeas claim."[72] Petitioner goes on to argue that "the lack of evidence to support the jury's conviction is compellingly demonstrated by the fact

---

[66]*Id.* at 324.

[67]*Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999) (quoting *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993)).

[68]*Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995).

[69]*Schlup*, 513 U.S. at 324.

[70]*Id.* at 321.

[71]Docket No. 9, at 16.

[72]*Id.*

that the Utah Court of Appeals was required to rely on a novel construction of the charging

statutes and evidence that was not presented to the jury to try and find a basis to affirm the

conviction."[73]

Considering these arguments, the Court finds that Petitioner has not met his burden to

"show that it is more likely than not that no reasonable juror would have found petitioner guilty

beyond a reasonable doubt."[74]  Specifically, Petitioner's arguments ignore the standard the Court

is to apply in evaluating actual innocence claims.  The Supreme Court has stated that "the

standard requires the district court to make a probabilistic determination about what reasonable,

properly instructed jurors would do."[75]  Further, "[i]t must be presumed that a reasonable juror

would consider fairly all of the evidence presented.  It must also be presumed that such a juror

would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable

doubt."[76]  Under this standard, Petitioner cannot prevail because the jury was properly instructed

on the elements of the charge and it must be presumed that they followed those instructions.

As to his third claim, Petitioner points out that the charging statutes have value

components.  Petitioner was convicted of a second degree felony because "the property . . .

unlawfully obtained or sought to be obtained was worth $10,000 or more."[77]  Petitioner argues

---

[73]*Id.*

[74]*Schlup*, 513 U.S. at 327.

[75]*Id.* at 329.

[76]*Id.*

[77]Utah Code Ann. § 61-1-21(2)(b).

that the evidence allegedly suppressed by the State would have established that the value components were not met and, therefore, he was factually innocent.

This argument must be rejected.  Petitioner's argument concerns legal innocence, rather than factual innocence.  Even if the value of the property at issue was less than $10,000, Petitioner could have been found guilty of securities fraud, though the degree of conviction would have been reduced to a third degree felony.[78]  The Tenth Circuit has made clear that actual innocence applies only to claims of factual innocence claims as opposed to legal innocence.[79] Thus, Petitioner cannot establish that he was factually innocent.

## V.  CONCLUSION

Based on the above, it is therefore

ORDERED that Petitioner's Petition for Writ of Habeas Corpus (Docket No. 1) is DENIED AND DISMISSED.  It is further

ORDERED that, pursuant to Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts, an evidentiary hearing is not required.  It is further

ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the Court DENIES Petitioner a certificate of appealability.

The Clerk of Court is directed to close this case forthwith.

---

[78]Utah Code Ann. § 61-1-21(2)(a).

[79]*Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000); *see also Black v. Workman*, 682 F.3d 880, 915 (10th Cir. 2012) (rejecting factual innocence claim where petitioner argued that he was actually innocent because he could have been convicted of a lesser charge).

DATED   September 23, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge